WENDY J. OLSON, IDAHO STATE BAR NO. 7634
UNITED STATES ATTORNEY
ANN T. WICK, IDAHO STATE BAR NO. 7119
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
801 E. SHERMAN AVE SUITE 192
POCATELLO, ID 83201
TELEPHONE: (208) 478-4166
FACSIMILE: (208) 478-4175

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JESUS NIETO,<br><br>Defendant. | Case No. CR-16-132-E-BLW<br><br>**RULE 11 PLEA AGREEMENT** |

I.     **GUILTY PLEA**

A.     **Summary of Terms.** Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(A) and (B), the defendant, the attorney for the defendant, and the government[1] agree that the defendant will plead guilty to Count One of the Superseding Information, which charges the defendant with Coercion and Enticement of a Minor, in violation of 18 U.S.C. § 2422(b).

This plea is voluntary and did not result from force, threats, or promises, other than any promise made herein. Upon acceptance of the defendant's guilty plea, and the defendant's full compliance with the other terms of this agreement, the government, will dismiss, under Federal Rule of Criminal Procedure 11(c)(1)(A), the Superseding Indictment. The defendant agrees that the facts and circumstances related to dismissed counts constitute relevant conduct for consideration during preparation of the presentence report and at sentencing.

B.     **Oath.** The defendant will be placed under oath at the plea hearing. The government may use any statement that the defendant makes under oath against the defendant in a prosecution for perjury or false statement.

II.    **WAIVER OF CONSTITUTIONAL RIGHTS AT TRIAL**

The defendant waives the following rights by pleading guilty pursuant to this agreement: 1) the right to plead not guilty to the offense(s) charged against the defendant and to persist in that plea; 2) the right to a trial by jury, at which the defendant would be presumed innocent and the burden would be on the government to prove the defendant's guilt beyond a reasonable doubt; 3) the right to have the jury agree unanimously that the defendant was guilty of the offense; 4) the right, at trial, to confront and cross-examine adverse witnesses; 5) the right to present evidence

---

[1] The word "Government" in this Agreement refers to the United States Attorney for the District of Idaho.

and to compel the attendance of witnesses; and 6) the right not to testify or present evidence without having that held against the defendant. If the court accepts the defendant's guilty plea, there will be no trial.

### III. NATURE OF THE CHARGES

A. **Elements of the Crime.** The elements of the crime of Coercion and Enticement of a Minor, 18 U.S.C. § 2422(b), as charged in count One, are as follows:

1. The defendant knowingly used a means of interstate or foreign commerce to persuade, induce, entice, or coerce Jane Doe and Jane Doe 2 to engage in any sexual activity;

2. Jane Doe and Jane Doe 2 were under the age of 18; and

3. The sexual activity was such that any person could be charged with a criminal offense.

B. **Factual Basis.** If this matter were to proceed to trial, the government and the defendant agree that the following facts would be proven beyond a reasonable doubt:

On February 11, 2016, the American Falls Police Department received a report that the defendant, Jesus Guerrero Nieto, had raped Jane Doe, a 12-year old female child, at his residence in American Falls, Idaho. During a forensic interview six days later, among other things, Jane Doe disclosed that approximately two months before, the defendant had met her at the mall in Chubbuck, Idaho, and taken her back to his residence in American Falls, Idaho. Based on Jane Doe's birthdate, she was 11 years old at the time.

As part of the investigation of the rape allegation, the American Falls Police Department obtained records of the defendant's activities conducted over the Internet through the use of Facebook. Although it is clear that the defendant and Jane Doe are also communicating on other platforms, such as other chat and messaging applications, the Facebook records revealed

communications between the defendant and Jane Doe, in which the defendant pressured Jane Doe on the subject of sex. The records also revealed that the defendant knew Jane Doe was under the age of 18. In a conversation on December 1, 2015, the defendant told Jane Doe, "We have to hide our relationship till later on." On December 2, 2015, the following exchange took place:

Jane Doe: So you're going to smash me like that's where this is going

Nieto: If you let me why not

Jane Doe: I would but I can't

Nieto: I'm jk I just want a good relationship with u

Jane Doe: lk I was kidding babe I would never but

Jane Doe: I can't loose my Virginity tell I'm married

Nieto: Ok babe I'm not forcing u to do anything tell ur ready

On December 5, 2015, Jane Doe told the defendant that her mom is going to put her on birth control. On December 15, 2015, the two discussed the defendant leaving:

Jane Doe: Babe I have to see you Friday

Jane Doe: I have to kiss you one more time before you leave

Nieto: I wanna smash u before I leave

Jane Doe: Wait why.??

Nieto: Cause I love you and I want to make u mine

Jane Doe: Babe your leaving rho

Jane Doe: Tho

Nieto: That's why well do it before I leave

Jane Doe: Babe but I'm not ready

Neito: I was jk I just wanted to check what you'll say

Nieto: But hey I'll ttyl I haven't slept at all and I'm really tired so I'll ttyl

On December 24, 2015, the topic of sex again was discussed:

Nieto: Oh trust mewe we'll make it unbelievable all the time and do whatever you want

Jane Doe: It's us remember

Nieto: But I mean I can't force you to do stuff either that's why it's up to you

Jane Doe: So even if I wasn't ready for sex would you wait

Nieto: I mean kind of but you promised you would after you got your thing [birth control] in your arm

Jane Doe: lk I did

Jane Doe: I'm just scared

Nieto: I mean it is up to you but a promise is a promise but like I said it's up to you

Jane Doe: lk what you mean

Nieto: I mean why would you be scared anymore if you got that thing in your arm now and I mean it's not scary at all I mean ya first it does hurt but after that you like it

Jane Doe: [heart emoji]

Jane Doe: People say that after sex it changes your life

Nieto: Wtf no it doesn't it makes it better I mean if your going to be sleeping with a lot of guys then ya it does changer your life but if it's only with one person then it's great

Jane Doe: I bet

Nieto: I mean I was first your then why can't I be your on that to since you promised

Jane Doe: Yeah

Nieto: Look I know you want it to be romantic I promise I will try to do that

Jane Doe: But I don't feel ready

Jane Doe: Like it's yes and then no

Nieto: Idk even know what to you then

Jane Doe: I'm just scared

Jane Doe: My body feels ready but I myself I'm not ready

Nieto: Then idk

Subsequent to this exchange, the defendant met Jane Doe at the mall and took her to his residence in American Falls. On the same day the police were notified of the rape, the defendant communicated with his mother through Facebook and told her that the girl accusing him of "grabbing her" is "16 or 15."

The Facebook records also revealed that the defendant was in communication with another minor female, Jane Doe 2, between November 3, 2015, and January 28, 2016. As with Jane Doe, the defendant communicated with Jane Doe 2 through methods other than Facebook. Nevertheless, in the Facebook communications, the defendant discussed having sexual intercourse with Jane Doe 2 and successfully convinced her to take naked pictures of herself. Jane Doe was 15 years old at the time and resided outside of Idaho.

For example, on November 11, 2015, Jane Doe wrote to the defendant, "I'm sorry I want u back how can I do that[?]" The defendant asked for "a good ass pic." After Jane Doe 2 sent two full-body pictures of herself dressed, the defendant asked, "When r u going to send me one almost naked already bBs[?]" Jane Doe 2 responded, "Never."

On December 7, 2015, the defendant again requested pictures from Jane Doe 2. Jane Doe 2 wrote, "I really don't want to lose u[.] I will do anything u want to have u back." The defendant asked, "So you would do anything[?]" Shortly thereafter, he asked for "almost nude pics," "everything of you," "everything from you," and "that fine ass of yours." Jane Doe 2 confirmed

that the defendant wanted pictures of her genitals and breasts and promised that she would send them in the morning. The defendant wrote, "Ok I'm trusting that u r and if u don't lie then maybe I would want you back as my gf." In the early morning hours of December 8, 2015, Jane Doe 2 sent the defendant three pictures. The first was a close up of Jane Doe 2's fully exposed vagina; the second was of Jane Doe's exposed breasts; and the third was of Jane Doe 2's midriff and upper thighs, showing her in her underwear.

On December 24, 2015, the defendant told Jane Doe 2 that he will pay for a plane ticket for her to come visit in the summer. When Jane Doe 2 referenced being 16 years old in 2016, the defendant appeared surprised and said that he thought she was already 16 years old. Jane Doe 2 reminded him that she had told him about her quincenera.

The defendant admits that he knowingly communicated over the Internet with both Jane Doe and Jane Doe 2, knowing they were under the age of 18, and that he used the Internet to persuade, induce, entice, or coerce the girls to engage in sexual activity for which he or they could be charged with a criminal offense.

## IV. SENTENCING FACTORS

    **A.**    **Penalties.** A violation of 21 U.S.C § 2422(b), as charged in Count One, is punishable by:

        1.    a term of imprisonment of up to life;

        2.    a term of supervised release of five years, up to life;

        3.    a maximum fine of $250,000, and a special assessment of $5,100.

    **B.**    **Supervised Release.** The court may impose a period of supervised release. No agreement exists as to the length of supervised release.

The law permits the combined prison time and term of supervised release to exceed the maximum term of incarceration for the crime(s) to which the defendant is pleading guilty. Violation of any condition of supervised release may result in further penalties and/or prosecution.

  **C.**  **Fines and Costs.** The court may impose a fine. No agreement exists as to the amount of the fine. The court may also order the defendant to pay the costs of imprisonment, probation, and supervised release.

  **D.**  **Special Assessment.** The defendant will pay the special assessment(s) before sentencing and will furnish a receipt at sentencing. Payment will be made to:

> The United States District Court, Clerk's Office
> Federal Building and United States Courthouse
> 801 E. Sherman Street, Room 119
> Pocatello, Idaho 83201.

  **E.**  **Restitution.** In addition to any forfeiture, fine, or costs imposed, the defendant agrees to pay restitution equal to the loss caused to any victim of the charged offense pursuant to any applicable statute. The defendant agrees to pay restitution in the amount ordered by the court. The defendant agrees that all monetary penalties imposed by the court, including restitution, will be due immediately and subject to immediate enforcement by the government. The defendant agrees that any payment schedule or plan set by the court is merely a minimum schedule of payments and neither the only method, nor a limitation on the methods, available to the government to enforce the judgment, unless the court specifically states otherwise. The defendant is aware that voluntary payment of restitution prior to adjudication of guilt is a factor in considering whether the defendant has accepted responsibility under the United States sentencing guidelines ("USSG") §3E1.1.

## V. UNITED STATES SENTENCING GUIDELINES

**A.  Application of Sentencing Guidelines.** The court must consider the USSG in determining an appropriate sentence under 18 U.S.C. § 3553. The defendant agrees that the court may consider "relevant conduct" in determining a sentence pursuant to USSG § 1B1.3.

The court is not a party to this agreement. The agreement does not bind the court's determination of the USSG range. The court will identify the factors that will determine the sentencing range under the USSG. While the court may take the defendant's cooperation, if any, and the recommendations of the parties into account, the court has complete discretion to impose any lawful sentence, including the maximum sentence possible.

Recognizing that the court is not bound by this agreement, the parties agree to the recommendations and requests set forth below.

**B.  Sentencing Guidelines Recommendations and Requests.**

1.  **Government's statements at sentencing.** The government reserves the right to fully allocute at sentencing regarding any sentencing recommendation and to rely on any information in support of its recommendation regardless of whether the information is contained in the plea agreement or the presentence report.

2.  **Acceptance of Responsibility.** If the defendant clearly accepts responsibility for the offense, the defendant will be entitled to a reduction of two levels in the combined adjusted offense level, under USSG § 3E1.1(a). The government will move for an additional one-level reduction in the combined offense level under § 3E1.1(b) if the following conditions are met: (1) the defendant qualifies for a decrease under § 3E1.1(a); (2) the offense is level 16 or greater; and (3) the defendant has timely notified authorities of the defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial

and permitting the court to allocate its resources efficiently. If, before sentence is imposed, the defendant fails to meet the criteria set out in USSG § 3E1.1, or acts in a manner inconsistent with acceptance of responsibility, the government will withdraw or decline to make such a recommendation.

3.  **Joint Recommendations.** The parties jointly make the following recommendations, and agree that the following shall be included as terms of the defendant's sentence and supervised release, expressly bargained for as a part of this agreement:

   a.  **Psycho-Sexual Assessment.** The defendant will arrange and submit to a sex offender evaluation pursuant to 18 U.S.C. § 3552(b) before sentencing in this case. The defendant must secure this evaluation from a mental health professional certified by the Idaho Sex Offender Classification Board (*see* http://somb.idaho.gov/pdf/evaluator_roster.pdf). The evaluation shall follow the format for psychosexual evaluations set forth by the Idaho Sex Offender Classification Board and the Practice Standards and Guidelines for Members of the Association for the Treatment of Sexual Abusers (ATSA). The defendant agrees to submit to all evaluation procedures at the direction of the treatment provider, including phallometry and polygraph testing if the treatment provider deems them necessary.

   b.  **Waiver of Confidentiality.** The defendant agrees to waive any right to confidentiality and to allow the provider conducting the psychosexual evaluation (and any subsequent treatment) to supply a written report or reports to the U.S. probation office, the court, and the government.

   c.  **Contact with Minors.** The defendant may not have direct or indirect contact with minors, children under the age of eighteen, unless approved in advance, in writing, by his probation officer.

d. **Access to Minors.** The defendant will not reside or loiter within 300 feet of schoolyards, playgrounds, arcades or other places, establishments and areas primarily frequented by minors.

e. **Occupational Restriction.** The defendant may not engage in any paid occupation or volunteer service that exposes him either directly or indirectly to minors, unless approved in advance, in writing, by his probation officer.

f. **Restriction on Computer/Internet Use.** The defendant may not possess or use a computer or other electronic device connected to the internet without prior permission, in writing, from his probation officer.

g. **Possession of Sexually Explicit Matter Involving Minors.** The defendant will not possess any child pornography or obscenity, or sexually explicit visual or text (written) material involving minors.

h. **Polygraph Testing.** The defendant agrees to participate in polygraph testing to monitor his compliance with supervised release and treatment conditions, at the direction of his probation officer and/or treatment staff.

i. **Post-Incarceration Treatment.** The defendant will successfully complete any course of treatment related to his offense, as directed by his probation officer, including but not limited to cognitive/behavioral treatment for sexual deviancy under the direction of a qualified mental health professional who is experienced in treating and managing sexual offenders, such as a member of the Association for the Treatment of Sexual Abusers (ATSA). The defendant will follow the rules of the treatment program as if they are the orders of the court.

j.  **Search Provision.** The defendant will be subject to a search of his person, home or vehicle, and any objects or materials (including computers and other types of electronic storage media) found therein, at the discretion of his probation officer.

k.  **Sex Offender Registration/Megan's Law/Adam Walsh Act Provision.** The defendant has been advised, understands and agrees that under the Sex Offender Registration and Notification Act, a federal law, the defendant must register and keep the registration current in each of the following jurisdictions: the location of the defendant's residence, the location of the defendant's employment; and, if the defendant is a student, the location of the defendant's school. Registration will require that the defendant provide information that includes name, residence address, and the names and addresses of any places at which the defendant is or will be an employee or a student. The defendant understands that federal law requires that he must update his registrations not later than three business days after any change of name, residence, employment, or student status. *See* 42 U.S.C. § 16913(c). State laws may be more restrictive.

The defendant has been advised and understands that Idaho law requires that such registration be updated with the sheriff of the county within two working days of coming into any county to establish permanent or temporary residence, commencement of employment or enrollment as a student in an educational institution, and provides that non-residents employed in counseling, coaching, teaching, supervising or working with minors in any way, regardless of the period of employment, must register with the sheriff of the county before beginning such employment. *See* I.C. 18-8307 (4)(a)(b). The defendant understands that failure to comply with these obligations may subject him to prosecution for, among other things, failure to register under

federal law, 18 U.S.C. § 2250, and failure to register under state law. It may also violate his supervised release.

1. **Conditional Use/Derivative Use Immunity.** As a condition of court-mandated evaluation and treatment, the defendant will be required truthfully to reveal his entire sexual history, including the possibility of other sexual crimes. Because full disclosure of that history is a necessary component of effective treatment, the government agrees that the defendant's admissions during psycho-sexual evaluation and sex offender treatment, to sexual crimes (excluding homicide) previously undisclosed to any law enforcement entity, will not be used against the defendant in a new criminal prosecution. *See United States v. Antelope*, 395 F.3d 1128 (9th Cir. 2005); *Kastigar v. United States*, 406 U.S. 441 (1972). However, the parties agree that this use immunity and derivative use immunity, is expressly conditioned, upon: 1) the defendant successfully completing sexual deviancy treatment, and 2) the defendant not materially violating the rules of supervised release, and/or committing a sexual crime or a crime involving the sexual exploitation of children after the date of this agreement. If the defendant fails to complete all aspects of treatment, or fails to comply with all material supervised release requirements, or reoffends as described above, then this use immunity provision is rescinded and the government may use defendant's statements against him.

2. **Stipulation Regarding Sentencing Guidelines.** The defendant understands that the USSG apply in an advisory manner and are not binding on the court. In exchange for the concessions made by the government, including its agreement to charge the defendant with one count alleging enticement and coercion of a minor, rather than two, and not file additional counts for producing, receiving, and possessing child pornography as supported by

the evidence, the defendant agrees not to seek a downward departure or variance based upon the argument that there is a lack of empirical evidence to support the recommendations of USSG §2G2.2.

3. **Downward Departure or Variance Request by defendant.** Unless otherwise specified in this paragraph, the defendant will not seek a downward departure or variance under 18 U.S.C. § 3553(a), without first notifying the Government of the defendant's intent to seek a downward departure and the defendant's reasons and basis therefor, such notice to be provided not less than 21 days before the date set for sentencing.

## VI. WAIVER OF RIGHT TO DIRECT APPEAL AND TO COLLATERAL ATTACK UNDER 28 U.S.C. § 2255

A. **Waiver:** In exchange for this agreement, and except as provided in subparagraph B, the defendant waives any right to appeal or collaterally attack the entry of plea, the conviction, the entry of judgment, and the sentence, including forfeiture and restitution.

The defendant acknowledges that this waiver shall result in the dismissal of any direct appeal or collateral attack the defendant might file seeking to challenge the plea, conviction or sentence in this case. Further, the filing of such an appeal or collateral attack will breach this agreement and will allow the government to withdraw from the agreement and take other remedial action.

If the defendant believes the government has not fulfilled its obligations under this agreement, the defendant will object at the time of sentencing; further objections are waived.

B. **Exceptions:**

1. **Direct Appeal:** Notwithstanding subparagraph A, the defendant shall retain the right to file one direct appeal if one of the following unusual circumstances occurs:

   a. the sentence imposed by the court exceeds the statutory maximum;

  b.  the court arrived at an advisory USSG range by applying an upward departure under chapter 5K of the USSG; or

  c.  the court exercised its discretion under 18 U.S.C. § 3553(a) to impose a sentence that exceeds the advisory USSG range as determined by the court.

The defendant understands that the above circumstances occur rarely and that in most cases this agreement completely waives all appellate rights.

  2.  **Motion Under 28 U.S.C. § 2255:** Notwithstanding subparagraph A, the defendant shall retain the right to file one 28 U.S.C. § 2255 motion alleging ineffective assistance of counsel.

## VII. PROVIDING INFORMATION FOR THE PRESENTENCE REPORT

The defendant agrees to provide material financial and other information requested by a representative of the United States probation office for use in preparing a presentence report. Failure to execute releases and provide information for the presentence report violates this agreement and relieves the government of its obligations in this agreement. Such failure and response by the government will not, however, constitute grounds for withdrawing the plea of guilty unless the government so requests. Providing materially false information will subject the defendant to additional penalties, including an enhancement under USSG § 3C1.1.

## VIII. DISCLOSING FINANCIAL INFORMATION

The defendant agrees to disclose all of the defendant's assets and sources of income to the government, including all assets over which the defendant exercises or exercised direct or indirect control, or in which the defendant has had any financial interest. The defendant also agrees to cooperate in obtaining any records relating to ownership of assets when sought by the government. The defendant agrees truthfully to complete a personal financial statement within fourteen days from the date the defendant signs this agreement. If the government provides a

financial statement to be completed, the defendant agrees to complete the financial statement truthfully and accurately within fourteen days from the date the defendant signs this agreement or the date the financial statement is provided to the defendant or counsel, whichever is later. The defendant agrees to provide updates with any material changes in circumstances, as described in 18 U.S.C. § 3664(k) within seven days of the event giving rise to the changed circumstances. The failure timely and accurately to complete, sign, and update the financial statements as required herein, may constitute failure to accept responsibility under USSG § 3E1.1, as well as other things.

The defendant authorizes the government: (a) to obtain a credit report on the defendant; (b) to inspect and copy all financial documents and information held by the United States probation office; and (c) to obtain financial records related to the defendant.

Before sentencing, defendant agrees not to dissipate any assets without the consent of both the government's financial litigation unit and the asset forfeiture unit. If any assets are sold, any sale proceeds received from sale of assets will be deposited with the clerk and, upon sentencing, paid toward any monetary penalties due as ordered in the judgment.

## IX.  NO RIGHT TO WITHDRAW PLEA

The defendant understands that the court may not follow the recommendations or requests made by the parties at the time of sentencing. The defendant cannot withdraw from this agreement or the guilty plea, regardless of the court's actions.

## X.  CONSEQUENCES OF VIOLATING AGREEMENT

**A.  Government's Options.** If the defendant fails to keep any promise in this agreement or commits a new crime, the government is relieved of any obligation: 1) to make a sentencing recommendation consistent with the terms promised in this agreement; and 2) not to

prosecute the defendant on other charges, including charges not pursued due to this agreement. Such charges may be brought without prior notice. In addition, if the government determines after sentence is imposed that the defendant's breach of the agreement warrants further prosecution, the government may choose between letting the conviction(s) under this agreement stand or vacating such conviction(s) so that such charge(s) may be re-prosecuted. If the government determines that a breach warrants prosecution before sentencing, it may withdraw from the agreement in its entirety.

The government's election to pursue any of the above options cannot be a basis for the defendant to withdraw the guilty plea(s) made pursuant to this agreement.

    **B.**    **Defendant's Waiver of Rights.** If the defendant fails to keep any promise made in this agreement, the defendant gives up the right not to be placed twice in jeopardy for the offense(s) to which the defendant entered a plea of guilty or which were dismissed under this agreement. In addition, for any charge that is brought as a result of the defendant's failure to keep this agreement, the defendant gives up: (1) any right under the Constitution and laws of the United States to be charged or tried in a more speedy manner; and (2) the right to be charged within the applicable statute of limitations period if the statute of limitations has expired.

Furthermore, if the defendant does not enter an acceptable plea, the government will move to continue the trial now set to allow the government adequate time to prepare. The defendant agrees not to contest such a continuance, and agrees that the resulting delay would be excludable time under 18 U.S.C. § 3161(h).

## XI.    MISCELLANEOUS

    **A.**    **No Other Terms.** This agreement is the complete understanding between the parties, and no other promises have been made by the government to the defendant or to the

attorney for the defendant. This agreement does not prevent any governmental agency from pursuing civil or administrative actions against the defendant or any property. Unless an exception to this paragraph is explicitly set forth elsewhere in this document, this agreement does not bind or obligate governmental entities other than that specified as the government in this agreement (i.e., the United States Attorney's Office for the District of Idaho). The government will bring the defendant's cooperation and pleas to the attention of other prosecuting authorities at the request of defendant' or counsel.

**B.     Plea Agreement Acceptance Deadline.** This plea offer is explicitly conditioned on the defendant's notification of acceptance of this agreement no later than 5:00 p.m. on January 24, 2017.

**C.     Risk of Removal from the United States.** The defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which the defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however. While arguments may be made in such a proceeding, it is virtually certain that defendant will be removed from the United States. The defendant nevertheless affirms that the defendant wants to plead guilty.

## XII.    UNITED STATES' APPROVAL

I have reviewed this matter and the agreement. This agreement constitutes a formal plea offer from the government. Any oral discussions with the defendant and defense counsel about a plea do not constitute a plea offer. Any written offer or agreement made before this agreement is

no longer a valid offer by the government and is rescinded. I agree on behalf of the United States that the terms and conditions set forth above are appropriate and are in the best interests of justice.

WENDY J. OLSON
UNITED STATES ATTORNEY
By:

_____      Date 1/20/17
ANN T. WICK
Assistant United States Attorney

## XIII. ACCEPTANCE BY DEFENDANT AND COUNSEL

I have read and carefully reviewed every part of this agreement with my attorney. I understand the agreement and its effect upon my potential sentence. Furthermore, I have discussed all of my rights with my attorney and I understand those rights. No other promises or inducements have been made to me, directly or indirectly, by any agent of the government, including any Assistant United States Attorney, concerning the plea to be entered in this case. I understand that this agreement constitutes a formal plea offer from the government. Any oral discussions between the government and me or my counsel about a plea do not constitute a plea offer. Any written offer or agreement made before this agreement is no longer a valid offer by the government and is rescinded. In addition, no one has threatened or coerced me to do, or to refrain from doing, anything in connection with this case, including enter a guilty plea. I understand that, if I am not a citizen or naturalized citizen of the United States, by pleading guilty in this case it is virtually certain that I will be removed from the United States. I am satisfied with my attorney's advice and representation in this case.

_____ _____
JESUS NIETO                      Date
Defendant
1-17-17

I have read this agreement and have discussed the contents of the agreement with my client. The agreement accurately sets forth the entirety of the agreement. I have conveyed all written offers from the government to the defendant pursuant to *Missouri v. Frye*, 132 S. Ct. 1399, 1408-09 (2012). I understand that this agreement constitutes a formal plea offer from the government. Any oral discussions between the government and me or my client about a plea do not constitute a plea offer. Any written offer or agreement made before this agreement is no longer a valid offer by the government and is rescinded. I have discussed with my client the fact that if my client is not a citizen or naturalized citizen of the United States, by pleading guilty in this case, it is virtually certain that my client will be removed from the United States. I concur in my client's decision to plead guilty as set forth above.

_____ _____
DAVID N. PARMENTER               Date
Attorney for the defendant
1/17/2017